UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Troy Alan Lawrence, | Case No. 20-cv-2508 (WMW/JFD) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Steve Kallis, Warden, | |
| Respondent. | |

This matter is before the Court on Troy Alan Lawrence's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the undersigned recommends that Mr. Lawrence's Petition be denied.

**I.   Background**

Mr. Lawrence is incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). (Pet. at 1, Dkt. No. 1.) His projected release date is April 14, 2034, via good conduct time release. (Boldt Decl. Ex. B at 1, Dkt. No. 6-2.)

**A.   Allegations in the Petition**

Mr. Lawrence challenges the loss of 41 days' good conduct time. (Pet. at 2.) According to Mr. Lawrence, medical staff determined he had taken illicit drugs after observing him with dilated pupils and an irritated manner. (*Id.* at 6.) Mr. Lawrence denies he had taken any illicit substances. (*Id.*) He claims he was exhausted and out of breath from

helping another inmate, who was having a seizure, when the correctional officer entered the room. (*Id.*) According to Mr. Lawrence, medical staff did not draw blood for laboratory tests or test him for hypoglycemia, from which he has suffered in the past. (*Id.*) He asserts that prison "staff do not have psychic abilities to look at a patient and diagnose their condition" without laboratory testing. (*Id.* at 7.) Mr. Lawrence asks for the restoration of lost good time credits and the expungement of the incident from his prison records. (*Id.*)

### B.     Respondent's Position

Respondent asks the Court to deny the Petition. Respondent argues that Mr. Lawrence received all process to which he was due in the disciplinary proceeding and that sufficient evidence supports the disciplinary determination and sanction. (Resp't's Mem. at 1, Dkt. No. 5.) Respondent provided the following facts in exhibits to the Declaration of Shannon Boldt. (Dkt. No. 6.)

On February 8, 2020, Senior Officer Specialist Bly was assigned to conduct visual inspections of the BA unit of FMC-Rochester. (Boldt Ex. D at 1, Dkt. No. 7.) He noticed Mr. Lawrence "acting in a strange manner" and nearly unable to stand upright or keep his balance. (*Id.*) His speech was slurred, his eyes were glassy, and his gaze darted around the room. (*Id.*) Senior Officer Specialist Bly helped Mr. Lawrence sit down. (*Id.*) The officer believed Mr. Lawrence might be under the influence of an illicit substance, but a breathalyzer test was negative for alcohol. (*Id.*) Mr. Lawrence's behavior and appearance were not consistent with any prescribed medication. (*Id.*)

An incident report was issued on February 9, 2020, for "Conduct which disrupts, most like use of narcotics." (Boldt Decl. ¶ 9 & Ex. D at 1.) Mr. Lawrence received a copy

2

of the report on the day it was issued. (Boldt Decl. Ex. D at 1.) He wrote a comment on the report that he had been trying to help his roommate, who was having a seizure. (*Id.*)

A disciplinary hearing notice was issued on February 13, 2020. (Boldt Decl. Ex. F at 1, Dkt. No. 6-5.) Mr. Lawrence originally indicated in writing that he wanted a staff representative, but he did not provide the name of a staff member, which is required, so he did not have a representative at the hearing. (*Id.*) Mr. Lawrence also indicated in writing that he did not want any witnesses. (*Id.*) Mr. Lawrence was also given written notice of his rights at the discipline hearing, which he acknowledged by signing the form. (Boldt Decl. Ex. E at 1, Dkt. No. 6-4.)

The disciplinary hearing occurred on March 12, 2020. (Boldt Decl. Ex. C.) The disciplinary hearing officer ("DHO") reviewed Mr. Lawrence's rights again with him during the hearing. (Boldt Decl. Ex. G at 2, Dkt. No. 6-6.) The DHO Report described the charges as "Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act." (*Id.* at 1.) The "most like another Greatest severity prohibited act" was identified as "Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." (*Id.*) Mr. Lawrence denied the charge. (*Id.*)

The DHO considered the original incident report, the investigation report, laboratory test results, a chain of custody form, a clinical encounter record, a photo spreadsheet, and written statements from several staff members. (*Id.*) An incident summary from FMC-Rochester Lieutenant Sladek, who responded to the incident, was consistent

3

with Senior Officer Specialist Bly's description of Mr. Lawrence's behavior and appearance. (*Id.* at 6.) A search of Mr. Lawrence's cell yielded several paraphernalia items consistent with narcotics use. (*Id.*) A nurse supervisor described Mr. Lawrence as "very agitated with altered augmentation. His pupils are blown and nonreactive." (*Id.* at 8.) She found his symptoms were not consistent with prescribed medication. (*Id.*) A statement from the physician on duty reflected the same observations, and the physician further noted that Mr. Lawrence "fit[] a recent pattern among inmates I have seen including agitation and blown nonreactive pupils with stable vital signs followed by return to normal consciousness with resolution of agitation *likely related to substance use*." (*Id.* at 9) (emphasis added). The physician conducted a medical evaluation of Mr. Lawrence, and his assessment was "[a]dverse effect of other drugs, medicaments, and biological substances." (*Id.* at 11–12.) Tests for cannabimimetics and alcohol were negative. (Boldt Decl. Ex. D at 4, 6.) In addition to this evidence, the DHO also considered Mr. Lawrence's statement that he was helping his roommate, who was possibly having a seizure, which caused him to be out of breath. (Boldt Decl. Ex. G at 2.)

The DHO determined that the greater weight of the evidence supported a finding that Mr. Lawrence "committed the prohibited act of conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons . . . most like use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." (*Id.* at 3–4.) The sanctions imposed were disallowance of 41 days' good conduct time, 14 days in disciplinary segregation, and

60 days of lost email and phone privileges. (*Id.*) The DHO explained the reason for each sanction and advised Mr. Lawrence of his right to appeal. (*Id.* at 4.)

## II. Discussion

A court may grant habeas relief under 28 U.S.C. § 2241 to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction. *Matheny v. Morrison*, 307 F. 3d 709, 711 (8th Cir. 2002).

Loss of good conduct time for violating a prison rule implicates a liberty interest protected by the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974). When a prison disciplinary proceeding could result in the loss of good conduct time, the prisoner must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). In addition, the findings of the DHO must be "supported by some evidence in the record." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

The Court finds that Mr. Lawrence received all of the procedural requirements he was due. He received advance written notice of the disciplinary charges. He had an

5

opportunity to call witness and present evidence in his defense. The DHO issued a written decision, described the evidence on which he relied, and set forth the reasons for the disciplinary action.

As to the "some evidence" requirement, the DHO's findings and decision were supported by the original incident report, written statements from Lieutenant Sladek and two medical personnel, a medical examination, and the paraphernalia discovered in Mr. Lawrence's room. Briefly summarized, Mr. Lawrence was described as agitated, acting strangely, almost unable to stand or balance, and with slurred speech, glassy eyes, and dilated and nonreactive pupils. The examining physician's opinion was that Mr. Lawrence had suffered an adverse reaction to drugs, nonprescribed medication, or other substances. The physician had seen other inmates with similar symptoms, "likely related to substance use." Drug paraphernalia was recovered from Mr. Lawrence's cell. The Court concludes the DHO's findings and decision were supported by "some evidence."

With respect to Mr. Lawrence's argument that medical staff failed to test him for hypoglycemia or otherwise properly evaluate him, the "some evidence" standard does not require the Court to assess the reliability of this evidence or reweigh the evidence before the DHO. *See Gonzalez v. FCI Schuylkill*, No. 1:21-CV-1166, 2021 WL 3771991, at *7 (M.D. Pa. Aug. 25, 2021) (declining to consider inmate's argument that his depression and anxiety caused symptoms similar to drug use). Moreover, Mr. Lawrence was not denied the opportunity to present this argument to the DHO or provide evidence in support of it.

Regarding Mr. Lawrence's explanation that he was exhausted and out of breath from helping another inmate, Mr. Lawrence had the opportunity to present his version of events

to the DHO, and he did so. The DHO determined that Mr. Lawrence's appearance and behavior were the result of substance use, not physical exertion, and, as detailed above, "some evidence" supports that decision.

### III. Conclusion

The disciplinary proceeding satisfied due process, and "some evidence" supported the DHO's findings. Accordingly, **IT IS HEREBY RECOMMENDED** that Troy Alan Lawrence's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1) be **DENIED.**

Date: October 28, 2021

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

### NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).